UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CANDICE FERGUSON,** )<br>)<br>**Claimant,** )<br>)<br>vs. )<br>)<br>**CAROLYN W. COLVIN, Acting** )<br>**Commissioner, Social Security** )<br>**Administration,** )<br>)<br>**Defendant.** ) | Case No. 2:16-cv-1508-CLS |

**MEMORANDUM OPINION AND ORDER**

Claimant, Candice Ferguson, commenced this action on September 12, 2016, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability and disability insurance benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

The ALJ found that claimant had the severe impairments of migraine headaches and obesity, but that she nonetheless retained the residual functional capacity to perform a full range of light work, thus enabling her to perform her past relevant work as a development manager and merchandise manager.[1] Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the opinions of the treating and examining physicians and failed to properly consider her obesity and mental impairments. Upon review of the record, the court concludes that these contentions are without merit, and the Commissioner's decision should be affirmed.

**A.     Medical Opinions**

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work,

---

[1] Tr. 16-20.

because the decision on that issue is not a medical question, but is a decision "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d) & 416.927(d).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. §§ 404.1527(c) & 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

1. **Dr. Counce**

Dr. Diane Counce, claimant's treating neurologist, completed "Clinical Assessment of Pain" and "Clinical Assessment of Fatigue/Weakness" forms on October 16, 2014. She indicated that claimant experienced pain to such an extent as to be distracting to adequate performance of daily activities or work, that physical activity would greatly increase claimant's pain to such a degree as to cause distraction

3

from or total abandonment of tasks, that claimant would experience some side effects from her prescribed medication, but not to such an extent as to cause serious problems in most instances, and that claimant experienced an underlying medical condition consistent with the pain she experienced.[2] Dr. Counce also indicated that fatigue and weakness were present, but would not prevent functioning in everyday activities or work. Physical activity would greatly increase claimant's fatigue and weakness to such an extent as to cause total abandonment of tasks. Claimant would experience some side effects from her prescribed medications, but not to such an extent as to create serious problems in most instances. Dr. Counce failed to circle either "yes" or "no" in response to the question, "Does this patient have an underlying medical condition consistent with the fatigue/weakness he or she experiences?"[3]

The ALJ did not specifically state how much weight he afforded to Dr. Counce's assessment. Instead, he described the normal results of the magnetic resonance angiogram and magnetic resonance imaging tests Dr. Counce performed, and noted that, despite the limitations Dr. Counce imposed,

> the longitudinal treatment records to system [*sic*] reflect that the claimant complains of headaches [and] has been prescribed various medications . . . . Yet, due to the overall nature of the claimant's underlying neurological issue the only substantial evidence is subjective in nature, such as the claimant's reports as to the severity or frequency

---

[2] Tr. 535-36.
[3] Tr. 537-38.

of headaches, and the effectiveness of the prescribed treatment medications.

Tr. 20 (alteration supplied). Even though the ALJ did not specify the amount of weight he afforded to Dr. Counce's assessment, it is clear that he did not find it to be controlling. As an initial matter, the ALJ did not find claimant's subjective testimony to be entirely credible.[4] Moreover, Dr. Counce found disabling levels of pain, while the ALJ found claimant capable of performing a full range of light work. Because it can clearly be discerned from the remainder of the ALJ's opinion that he did not give controlling weight to Dr. Counce's assessment, and because it also is clear that the ALJ thoroughly considered all of Dr. Counce's records, it was at most harmless error that the ALJ failed to articulate the weight he afforded to Dr. Counce's assessment. *See Brown v. Commissioner of Social Security,* 680 F. App'x 822, 824-25 (11th Cir. 2017) (holding that the ALJ's failure to specify the weight afforded to the opinion of one of claimant's treating medical providers was harmless error when it was apparent that the ALJ had considered all records from the treating provider "in detail").

The ALJ's decision not to give controlling weight to Dr. Counce's assessment was in accordance with applicable law and supported by substantial evidence. The

---

[4] Tr. 18 ("In fact, various aspects of the record give rise to questions as to the veracity of the claimant's allegations."). As the Commissioner points out, claimant has not challenged the ALJ's credibility finding. *See Sanchez v. Commissioner of Social Security*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (holding that a claimant waived an argument when she did not expressly raise it before the district court).

ALJ adequately articulated his reasons for rejecting the assessment when he stated that the assessment appeared to be based solely upon claimant's subjective complaints, and that all the objective neurological findings were normal.

## 2. Dr. Devere

Dr. Ronald Devere, a neurologist, testified as a medical expert retained by the Social Security Administration during the January 27, 2015 administrative hearing. After reviewing claimant's medical records, Dr. Devere testified that, even though claimant's medical providers had been diagnosing her with migraine headaches, her neurological examinations and brain scans had always been normal. He suspected that her headaches may have been contractual or "tension" in origin, instead of neurological. He also was concerned that claimant's numerous medications might have been exacerbating, not alleviating, her condition.[5] Dr. Devere opined that claimant would need to be limited to sedentary work because her medications could affect balance, coordination, and thinking. She could sit for six hours, stand for an hour, and walk for an hour during an eight-hour work day. She could not drive a car, work with moving machinery, climb ladders, be exposed to unprotected heights, or use foot pedals. She could lift ten pounds occasionally and five pounds frequently. She could only occasionally climb stairs, reach, balance, stoop, and bend, but she

---

[5] Tr. 32-36.

would not have any limitations on her fine and gross manipulation.[6]

The ALJ afforded Dr. Devere's assessment only "some weight," because "there are no physical findings within the record to establish the claimant's neurological issue resulting in significant exertional or postural restrictions."[7] The ALJ was entitled to not give controlling weight to Dr. Devere's assessment if it was unsupported by record findings, and, indeed, the record does not contain any objective neurological findings to support a headache disorder of the severity claimant alleges.

### 3.    Dr. Powell

Dr. Danielle Powell performed a consultative examination on May 18, 2013. Claimant complained of migraine headaches, cervical dystonia, and occipital neuralgia.[8] She reported being able to take care of her personal needs, but unable to perform housework or yardwork. She stated that she lies in bed all day. Claimant was able to walk to the examination room without assistance, sit comfortably, and get on and off the examination table comfortably. Her gait was normal. She had tenderness in the cervical area, but no muscle spasms and good range of motion in her

---

[6] Tr. 41-43.

[7] Tr. 20.

[8] One leading medical dictionary defines "dystonia" is "dyskinetic movements due to disordered tonicity of muscle." *Dorland's Illustrated Medical Dictionary* 579 (30th ed. 2003). "Occiptal Neuralgia is defined as "pain in the distribution of the occipital nerves, due to pressure or trauma to the nerve." *Id.* at 1251.

neck.  Her motor strength, motor skills, senses, reflexes, and cranial nerves all were normal.  Dr. Powell assessed no limitations on sitting, but opined that claimant could stand and walk for less than two hours each, due to fatigue and pain.  Dr. Powell indicated that claimant could occasionally lift five to ten pounds, and could frequently lift ten to twenty pounds, but that assessment appears to be based upon a typographical error.  It is more reasonable to conclude that Dr. Powell intended to state that claimant could *frequently* lift five to ten pounds, and could *occasionally* lift ten to twenty pounds.  In any event, Dr. Powell assessed no limitations on hearing, speaking, traveling, hazards, reaching, handling, fingering, or feeling, but there were limitations of frequent stooping, crouching, kneeling, crawling, and climbing steps, stairs, and ladders.[9]

The ALJ afforded Dr. Powell's assessments only some weight, because they "appear to rely primarily upon the claimant's subjective allegations, as Dr. Powell noted that the claimant's limitation on standing was secondary due to fatigue and her limitations in walking were secondary to pain, which . . . cannot be quantified in an objective manner."[10]  Again, the ALJ was entitled to at least partially reject Dr. Powell's assessment as being based upon purely subjective allegations.  Moreover, as discussed above and as made apparent in the other physicians' records, the record

---

[9] Tr. 456-60.
[10] Tr. 19 (ellipsis supplied).

does not contain any objective evidence supporting a severe migraine disorder.

    4.    **Summary**

In summary, the ALJ properly considered all of the medical opinions in the record, and his findings were supported by substantial evidence. He did not improperly substitute his opinion for that of the medical providers, as claimant suggests. Instead, he rejected those providers' opinions for reasons that were adequately articulated and supported by the record.

**B.    Obesity**

The ALJ was required to evaluate the effect of claimant's obesity on her residual functional capacity in accordance with Social Security Ruling 02-1p, which states the following:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balancing, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.
>
> An assessment should also be made of the effect obesity has upon

the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

    The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

    For a child applying for benefits under title XVI, we may evaluate the functional consequences of obesity (either alone or in combination with other impairments) to decide if the child's impairment(s) functionally equals the listings. For example, the functional limitations imposed by obesity, by itself or in combination with another impairment(s), may establish an extreme limitation in one domain of functioning (*e.g.*, Moving about and manipulating objects) or marked limitations in two domains (*e.g.*, Moving about and manipulating objects and Caring for yourself).

As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p, 2000 WL 628049, at *6-7.

The ALJ found that obesity was one of claimant's severe impairments.[11] He also explicitly acknowledged that SSR 02-1p instructs that "a claimant's obesity can

---

[11] Tr. 16.

exacerbate a separate impairment to the point of" causing a disability,[12] and he found that "there is no medical evidence or testimony that indicates that the claimant's obesity exacerbates any other condition to the point of meeting its corresponding listing."[13] Despite the fact that claimant's obesity "is not such as to prevent ambulation, reaching, orthopaedic and postural maneuvers, or to prevent her from working or being able to complete a fairly full range of activities of daily living, it would reasonably somewhat reduce her ability to stand, walk, and lift."[14] To accommodate those concerns, the ALJ limited claimant to light work.[15]

The ALJ complied with all the requirements of SSR 02-1p. Moreover, nothing in the record supports a finding that claimant's obesity impaired her more severely than the ALJ found. Accordingly, the court finds that the ALJ properly considered claimant's obesity.

### C. Mental Impairments

Claimant also asserts that the ALJ failed to include the effects of her mental impairments in the residual functional capacity finding. The ALJ found that claimant's mental health concerns did not constitute a severe impairment because there was no medical evidence that claimant's mental health conditions had lasted for

---

[12] Tr. 17.
[13] Tr. 18.
[14] Tr. 20.
[15] *Id.*

at least twelve months. The ALJ did not impose any specific limitations as a result of potential mental impairments, instead assessing claimant as capable of performing a full range of work at the light exertional level.[16] Claimant argues that the ALJ should have found claimant's mental impairments to limit her to unskilled work, which would have rendered her incapable of performing her past relevant work as a development manager, merchandise manager, warehouse manager, retail manager, and assistant retail manager.

As an initial matter, claimant does not explain why an inability to perform skilled work would have prevented her from performing her past relevant work. Even more importantly, claimant has not identified any evidence that would support a need for additional restrictions due to her mental limitations. Dr. Sylvia Colon performed a consultative psychiatric exam on May 18, 2013. Dr. Colon noted that claimant had not claimed disability for psychiatric reasons. Claimant exhibited depressed mood during the examination. Her communication and thought systems were normal. Her memory, fund of knowledge, calculations, concentration, abstract thinking, and ability to discern similarities and differences were good. Her judgment and insight were fair. Dr. Colon concluded that claimant would be capable of managing her own funds, and she had no significant work-related limitations.[17]

---

[16] Tr. 17-18.
[17] Tr. 450-53.

Dr. Colon examined claimant again on February 28, 2015. Claimant reported sadness and difficulty coping with her recurring headaches. Dr. Colon stated:

> There is a very high difficulty (50/50 chance) to distinguish her symptoms associated with her neurological conditions, decreased motivation, decreased concentration, and ability to focus and those of possible depression. She also reports decreased interest in activities, hopelessness, helplessness, and she feels like a burden to everyone. *This is all related to her chronic pain condition.*

Tr. 551 (emphasis supplied). Claimant exhibited good concentration, persistence, and pace; appropriate grooming and hygiene; normal attitude and behavior; normal communication; normal thought content; sad mood and affect; good memory, fund of knowledge, calculations, and concentration; and appropriate abstract thinking, ability to discern similarities and differences, judgment, and insight. Dr. Colon assessed claimant with a mood disorder secondary to her medical conditions. She found that claimant would be capable of managing her own funds. She also assessed claimant with moderate limitations in her abilities to: maintain attention and concentration for an extended period; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday without interruptions from psychiatrically-based symptoms and perform at a consistent pace without an unreasonable number and rate of rest periods; interact appropriately with the general public; respond appropriately to work pressures or changes in the work setting; consistently carry out and remember simple instructions;

and interact appropriately with coworkers and supervisors in a work setting.[18]

Because there is no evidence that claimant experienced any more than moderate limitations as a result of her mental impairments, the court cannot find that the ALJ erred in finding claimant capable of performing a full range of light work, with no additional limitations imposed due to her mental conditions.

**D.     Conclusion and Order**

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 10th day of August, 2017.

_____
United States District Judge

---

[18] Tr. 551-54.